IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PEDRO FELIPE VALDES | ) | |
| and | ) | |
| ANA MARIA ALDANA, | ) | Case No. 18-13291-KHK |
| | ) | Chapter 7 |
| Debtors. | ) | |

---

| | | |
|---|---|---|
| ITECH AG, LLC | ) | |
| 1621 N. Kent St., Suite 815 | ) | |
| Arlington, VA 22209 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. _____ |
| | ) | |
| PEDRO FELIPE VALDES | ) | |
| 14531 Old Mill Road | ) | |
| Centreville, VA 20121 | ) | |
| | ) | |
| Defendant. | ) | |

---

### ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW Plaintiff iTech AG, LLC, by and through its undersigned counsel, and petitions this Court pursuant to 11 U.S.C. § 523(a)(2) for the limited purpose of determining that the debt owed to iTech AG, LLC is non-dischargeable.  In support thereof, Plaintiff submits the following:

### PARTIES

1.     Plaintiff, iTech AG, LLC ("iTech") is a Virginia limited liability company with its principal place of business located at 1620 North Kent Street, Suite 815 Arlington, VA 22209. iTech is authorized to transact business in the Commonwealth of Virginia.   iTech is a creditor of

1

Pedro Felipe Valdes and his wife, Ana Maria Aldana in the above-captioned Chapter 7 Bankruptcy.

2.     Defendant Pedro Felipe Valdes ("Mr. Valdes") is a citizen of the Commonwealth of Virginia and is domiciled at 14531 Old Mill Road Centreville, VA 20121.  Mr. Valdes and his wife, Ana Maria Aldana are individual debtors in the above-captioned Bankruptcy case.  Also, Mr. Valdes is a member and President of Artifact, LLC, a luxury high end residential home builder.

3.     Artifact, LLC ("Artifact") is a luxury high end residential construction company. Artifact is a Virginia limited liability company with its principal place of business located at 14531 Old Mill Road Centreville, VA 20191.  Artifact is authorized to transact business in the Commonwealth of Virginia.  On the same day Mr. Valdes and his wife filed the instant Bankruptcy petition, Mr. Valdes also put Artifact into Bankruptcy.  The Artifact Bankruptcy case is styled as *Artifact, LLC,* Case No.: 18-13290 and is before the Honorable Brian F. Kenney.

## JURISDICTION AND VENUE

4.     This Adversary Proceeding arises from the Defendant's Ch. 7 Bankruptcy, Case No. 18-13291, filed on September 28, 2018 (the "Petition Date").

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b), and 11 U.S.C. § 523.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6.     Venue is proper pursuant to 28 U.S.C. § 1409(a).

## FACTS

**I.     The Joint Venture Agreement**

7.     Artifact's business involves the purchase, demolition, design, construction, and sale of luxury homes in the Northern Virginia area.

8.     Mr. Valdes was at all relevant times a Member and President of Artifact.

9. At all relevant times, Mr. Valdes operated, controlled and directed day to day business operations and business practices of Artifact.

10. With the knowledge of his business investors and partners, Mr. Valdes sought investors to privately fund the purchase and development of construction projects.

11. In 2017, as part of the development and funding for the 1409 Cola Drive Project (the "Project"), Artifact and iTech entered into a Joint Venture Agreement ("JV Agreement") to build, own, hold, manage, operate, improve, and construct improvements at the Project. A true and correct copy of the JV Agreement is attached hereto and incorporated by reference herein as **Exhibit A**.

12. iTech and Mr. Valdes were the sole members of the Joint Venture.

13. Pursuant to the terms of the JV Agreement, the members initial contributions were as follows:

    a. iTech – Three Hundred Thousand ($300,000) Dollars (the "Capital Contribution"); and,

    b. Artifact – Two Hundred Eighty-Three Thousand One Hundred Ninety-Nine ($283,199) Dollars.

14. In part, Mr. Valdes represented the following:

    a. Artifact would be the Project's home builder and in doing so, Artifact would design and provide the construction services at the Project;

    b. iTech's "initial $300,000 ("Three Hundred Thousand") Capital Contribution will be secured … and guaranteed to be reimbursed in addition to the corresponding Equity Interest [iTech] will receive after the sale of the property";

  c. "[t]he real property located at 1409 Cola Dr., Mclean, VA 22101 will serve as the collateral and will be used to protect the $300,000 contribution of [iTech] …";

  d. Artifact has authority to secure iTech's Capital Contribution with the 1409 Cola Drive Mclean, VA property (the "Property");

  e. Artifact was to secure iTech's Capital Contribution with the Property;

  f. The Capital Contribution was guaranteed to be reimbursed in addition to the corresponding equity interest after the sale of the Property;

  g. iTech would receive its Capital Contribution and equity interest upon the sale of the Property; and,

  h. iTech would make a profit after the sale of the Property.

15. iTech relied on Mr. Valdes' representations.

16. In reliance on Mr. Valdes' representations, iTech entered into the JV Agreement.

17. Since entering the JV Agreement until the date Mr. Valdes filed the Petition, Mr. Valdes continued to represent Artifact's involvement at the Project, wherein iTech's Capital Contribution was contributed, and confirmation that iTech's Capital Contribution was secured with the consent of the Property owners.

18. Indeed, on July 11, 2018, Mr. Valdes executed an Irrevocable Assignment of Partnership Proceeds wherein Mr. Valdes continued to make such false and misleading representations.  A true and correct copy of the Assignment of Proceeds is attached hereto and incorporated herein as **Exhibit B**.

19. Again, in part, Mr. Valdes made the following representations:

  a. Artifact is an active investor in the Project;

    b. Artifact is the builder for the Project;

    c. Artifact is indebted to iTech and pledges, assigns and sets over to iTech all amounts not to exceed Three-Hundred Twenty-Six Thousand ($326,000) Dollars from the sale of the Property;

    d. Artifact irrevocably directs … the 1409 Cola Partnership to make all payment amounts due to Artifact under the 1409 Cola Drive Partnership Agreement directly to iTech; and,

    e. It is with the informed consent of all the 1409 Cola Drive Partnership Investors that Mr. Valdes made such representations.

**II.    1409 Cola Drive Partnership**

20. Shortly before the parties entered into the JV Agreement, in late 2017, Constanza Valdes, Artifact, Givago, Nicolas Giraldo Londono, and Catalina Montoya discussed undertaking the redevelopment of the Property. Specifically, the redevelopment includes the residential construction and subsequent sale of the Property.

21. Mr. Juan Pablo Valdes is the owner of Givago and the brother of the Debtor, Mr. Valdes.

22. Ms. Constanza Valdes is the sister of the Debtor, Mr. Valdes.

23. Mr. Londono and Ms. Montoya are minority interest holders in the 1409 Cola Drive Partnership and are also related to the Debtor, Mr. Valdes.

24. On or about October 7, 2017, Constanza Valdes, Artifact, Givago, Nicolas Giraldo Londono, and Catalina Montoya entered into a Partnership Agreement ("the 1409 Cola Partnership") wherein the parties agreed to develop the Property with the intent to subsequently sell the Property and split the profits based on the investors' partnership interest. A true and

5

correct copy of the 1409 Cola Partnership Agreement is attached hereto and incorporated by reference as **Exhibit C**.

25. As set forth in the 1409 Cola Partnership Agreement, the investors' made the initial contributions to the 1409 Cola Partnership:

    a. Constanza Valdes - $300,000; in kind – retaining 36.72% of the Property;

    b. Artifact –$317,578.32 in cash - towards the project's construction cost;

    c. Givago – $775,000 – buying 63.28% of the Property;

    d. Giraldo/Montoya – $50,000 – in cash – towards project's construction costs.

26. Shortly after the parties entered into the 1409 Cola Partnership;

    a. on or about October 17, 2017, Givago and Constanza Valdes purchased the Property for $817,000;

    b. Giraldo/Montoya contributed $50,000 to the Partnership; and

    c. With the consent of all Partnership parties, Artifact made steps to finance its portion of the Partnership investment.

27. Mr. Valdes used iTech's Capital Contribution as its portion of the 1409 Cola Drive Partnership contribution.

28. Now, Mr. Valdes asserts his representations to iTech were false and misleading.

29. Mr. Valdes represents he made such false statements to induce iTech to enter the JV Agreement.

**III.    Mr. Valdes' Affidavit**

30.    After Mr. Valdes personally filed for Bankruptcy and put Artifact into Bankruptcy, Mr. Valdes, in a blatant self-serving attempt to protect his brother and sister, retracted Artifact's involvement in the Project and the 1409 Cola Drive Partnership Agreement.

31.    Mr. Valdes retraction served solely to benefit his brother and sister while at the same time adversely affecting every single creditor in both Mr. Valdes' and Artifact's bankruptcy cases.

32.    Specifically, Mr. Valdes furnished an Affidavit ("Affidavit") wherein for the first time, and despite numerous contemporaneous representations to the contrary, he now represents: i) iTech's Capital Contribution was "never invested in Cola Drive;" and, ii) Artifact was not the builder of the Project. A true and correct copy of the Affidavit is attached hereto and incorporated by reference herein as **Exhibit D**.

33.    According to the Affidavit, because Mr. Valdes did not use iTech's Capital Contribution in the 1409 Cola Drive Partnership, he believes the Three Hundred Thousand dollars ($300,000), admittedly owed to iTech, is owed to iTech under the terms of an earlier loan, secured by a Promissory Note entered into between Mr. Valdes, Artifact and iTech.

**IV.    The Promissory Note Loan**

34.    On or about March 28, 2017, Mr. Valdes and Artifact, jointly and severally borrowed Four Hundred Thousand Dollars ($400,000) from iTech.

35.    To memorialize the loan, Mr. Valdes and Artifact, jointly and severally, signed a "Virginia Promissory and Confessed Judgment Note" (the "Note") evidencing the loan and setting forth the repayment terms. A true and correct copy of the Promissory Note is attached hereto and incorporated by reference herein as **Exhibit E**.

36. Pursuant to the Note, Artifact and Mr. Valdes were to pay the principal loan amount, plus interest in the amount of One Hundred Thousand Dollars ($100,000).

37. Upon the Note's maturity date, Mr. Valdes and Artifact made a partial re-payment in the amount of Two Hundred Thousand Dollars ($200,000).

38. Thereafter, as discussed above, based on Mr. Valdes' representations, at Mr. Valdes request, iTech agreed to transfer/roll over the remaining Three Hundred Thousand Dollars ($300,000) into the JV Agreement as iTech's Capital Contribution.

39. At all times prior to the Petition Date, Mr. Valdes represented to iTech the $300,000 did in fact roll over into the Joint Venture and subsequently into the 1409 Cola Drive Partnership Agreement.

40. Under the terms of the Note, Artifact and Mr. Valdes are in default of the Note.

41. Under the terms of the Note, "Artifact, LLC and Pedro Felipe Valdes are jointly and severally liable." See Exhibit E at § 6.

42. Furthermore, under the terms of the Note, Debtors "acknowledge that in the event the Debtor(s) seek relief under the United States Bankruptcy Code, 11 USC § 101, et seq., the obligations evidenced by this Note would be non-dischargeable under 11 USC § 523 and/or 727 and as such this obligation also is non-dischargeable under 11 USC § 523 … [Debtors] agree[] to execute an appropriate order denying the discharge of the obligation evidenced by this Note." See Exhibit E at § 9.

43. Having now represented that iTech's monies were never rolled over into the JV Agreement, Mr. Valdes openly admits the JV Agreement was a product of his actual fraud.

44. In support of his alleged fraud scheme, which also now serves to significantly benefit his brother and sister, Mr. Valdes now represents he did not use iTech's Capital Contribution as Artifact's initial investment into the 1409 Cola Drive Partnership.

45. Amazingly, Mr. Valdes also now represents that despite building permit records and several other contemporaneous documentations that contradict – he now asseerts Artifact was not the builder of the Project.

46. In short, based on Mr. Valdes recent retractions and NEW representations, he seeks to seeks discharge of iTech's Capital Contribution under the premise the monies were owed – not under the JV Agreement – but rather under the terms of the Promissory Note.

47. What is clear and not in dispute, at the time the Three Hundred Thousand Dollars ($300,000) were due to iTech, Mr. Valdes committed fraud.

## **COUNT ONE – 11 U.S.C. § 523(a)(2)(A)**

48. iTech re-alleges each allegation contained in paragraphs 1 through 47, as though expressly set forth herein

49. 11 U.S.C. § 523(a)(2)(A) states:

> A discharge under section 727 . . . or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services . . . to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

**A.    Joint Venture Agreement**

50. The transactions stated above and herein involved money received in the form of a transfer/roll-over from iTech to Mr. Valdes under the terms of the Note to the JV Agreement.

51. As set forth above, Mr. Valdes personally and in his role as a Member and President of Artifact, made numerous material false representations to induce iTech to contribute the Capital Contribution to the JV Agreement.

52. Mr. Valdes made such statements to actually induce iTech to fund and enter into the JV Agreement.

53. Mr. Valdes actively participated in making false representations with the purpose and intention of inducing iTech to fund and enter into the JV Agreement.

54. Mr. Valdes knowingly and fraudulently induced iTech to enter the JV Agreement.

55. iTech justifiably and reasonably relied on Mr. Valdes' false pretenses and materially false representations, which, in part, assured iTech that its Capital Contribution was used as Artifact's initial contribution to the 1409 Cola Drive Partnership and for the purchase and construction of the Project.

56. At all times, Mr. Valdes intended for iTech to rely on his representations.

57. Mr. Valdes personally and as a Member and President of Artifact benefited from iTech's Capital Contribution.

58. By representing Artifact is no longer a stake holder in the 1409 Cola Drive Partnership, Mr. Valdes actions personally benefited his brother and sister.

59. iTech suffered losses in the amount of its Capital Contribution and its equity interest in the construction and development of the Property.

60. Mr. Valdes' representations were material and iTech's reliance on Mr. Valdes' false pretenses and representations and/or fraudulent conduct was the proximate cause of its loss and damages.

61. Mr. Valdes obtained iTech's money through his material false pretenses, false representations, and/or actual fraud. Accordingly, Mr. Valdes' debt to iTech in the amount of $300,000 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**B.     Promissory Note**

62. As referenced in the Note, Mr. Valdes "acknowledge[d] that in the event the Debtor(s) seek relied under the United States Bankruptcy Code, 11 USC § 101, et seq., the obligations evidenced by this Note would be non-dischargeable under 11 USC § 523 and/or 727 and as such this obligation also is non-dischargeable under 11 USC § 523 … [Debtors] agree[] to execute an appropriate order denying the discharge of the obligation evidenced by this Note." See Exhibit E § 9.

63. Upon entering the Note, Mr. Valdes never intended to pay iTech its contribution.

64. At the time Mr. Valdes entered the Note, he was already engaged in a ponzi-scheme with his family members, JP Valdes and Constanza Valdes, among other family members, wherein he sought investors' monies with the intent to defraud them by taking their investments and not paying them back.

65. Mr. Valdes knew at the time he entered the Note that he would not be able to pay the loan back; nevertheless, he represented that he would pay iTech.

66. Mr. Valdes actively participated in making false representations with the purpose and intention of inducing iTech to enter the Note.

67. Mr. Valdes knew at the time he entered the Note that he would not be able to pay 20% interest on the short-term loan, nevertheless, he represented that he would be able to pay iTech the interest at that rate.

68. Mr. Valdes intended that iTech would rely on his misrepresentations to induce iTech into the Note.

69. Mr. Valdes actively participated in making false representations with the purpose and intention of inducing iTech to fund and enter into the Note.

70. iTech indeed relied on Mr. Valdes' representation when entering the Note.

71. iTech justifiably and reasonably relied on Mr. Valdes' false pretenses and materially false representations, which, in part, assured iTech that its loan would be repaid.

72. Mr. Valdes deceitfully applied a bait and switch scheme where he convinced investors to lend more money to his scheme.

73. When the new investors' made investments to Mr. Valdes, Mr. Valdes used the money to fund his families' new land purchases, pay construction costs for his families' construction projects and pay interest payments to other investors.

74. Mr. Valdes from the beginning has continuously made misrepresentations with intent to defraud.

75. Mr. Valdes obtained iTech's money though false pretenses, false representations, and/or actual fraud. Accordingly, Mr. Valdes' debt to iTech in the amount of $300,000 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

76. Furthermore, Mr. Valdes held on to iTech's money through false pretenses, false representations, and/or actual fraud. Accordingly, Mr. Valdes' debt to iTech in the amount of $300,000 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff iTech AG, LLC respectfully requests this Court:

1. Grant judgment in favor of iTech AG, LLC and against Mr. Pedro Felipe Valdes in the amount of Three Hundred Thousand Dollars ($300,000), together will all interest, attorneys' fees and costs;

2. Hold the debt as non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A); and,

3. Grant any other relief that it deems just and proper.


Dated: January 5, 2019                                  Respectfully submitted,

                                                        **iTECH AG, LLC**

                                                        By Counsel

 /s/  Seth A. Robbins
Seth A. Robbins, Esq.
**ROBBINS LAW GROUP, PLLC**
1100 North Glebe Road
Suite 1010
Arlington, VA 22201
Tel: (703) 224-4436
Fax: (202) 836-9840
Email: srobbins@robbins-lawgroup.com
*Counsel for iTech AG, LLC*